FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2015 NOV 12 PM 1 10

STEPHAN HARRIS, CLERK
CHEYENNE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| NUCOR, INC., a Wyoming Corporation, and BILL FARLEIGH, d/b/a FARLEIGH OIL PROPERTIES,<br><br>Plaintiffs,<br><br>v.<br><br>PETROHAWK ENERGY CORPORATION, a foreign corporation,<br><br>Defendant. | Case No. 14–CV–132–ABJ |

**OPINION AND ORDER GRANTING IN PART, DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**AND**
**OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

The plaintiffs' *Motion for Partial Summary Judgment* (Doc. No. 36), the plaintiffs' memorandum in support (Doc. No. 37), the defendant's opposition (Doc. No. 43), the defendant's *Motion for Summary Judgment* (Doc. No. 38), the defendant's memorandum in support (Doc. No. 39), the plaintiffs' opposition (Doc. No. 40), the affidavit of Tom E. Swanson (Doc. No. 40-1), and the defendant's reply (Doc. No. 44) are before the Court. After reviewing the parties' submissions, the applicable law, and being fully advised, the Court finds that the defendant's *Motion for Summary Judgment* (Doc. No. 38) should be **GRANTED IN PART, DENIED IN PART**, and the plaintiffs' *Motion for Partial Summary Judgment* (Doc. No. 36) should be **DENIED** for the reasons stated below.

The plaintiffs are two twenty-five percent (25%) working interest owners of a single natural gas well in Big Horn County, Wyoming, who claim that the defendant operator did not

pay any royalties from 1992 until 2006. The two owners, Nucor Oil and Gas, Inc. ("Nucor") and Bill Farleigh ("Farleigh"), are suing Petrohawk Energy Corporation ("Petrohawk") for the unpaid royalties. Petrohawk merged with KCS Mountain Resources Inc. ("KCS"), the company that allegedly owed the plaintiffs royalties during that period of time. First, the Court will give a brief factual background. Next, Court will present the standard of review, followed by an analysis of the law and facts as to both motions. Finally, the Court will conclude by listing what issues remain for trial.

## BACKGROUND

The Lamb Bishop 1A Well ("the Well") is located in Section 12, Township 51 North, Range 93 West, Big Horn County, Wyoming. The parties agree, relying on a title opinion (Doc. No. 39-1), that the plaintiffs, Nucor and Farleigh, each owned a twenty-five percent (25%) working interest in the Well from 1992 until 2006.

From the beginning of plaintiffs' ownership in 1983 until November of 1991, they received mineral royalties. That month, the Natural Gas Processing Company wrote the plaintiffs a letter explaining it would not be purchasing gas from the Well for economic reasons. The plaintiffs believed that the Well was taken out of production, thus ending their mineral royalty payments.

In 1992, KCS acquired the other fifty percent (50%) working interest in the Well. KCS also became the operator the Well. KCS operated the well from 1992 until 2006.[1] On July 12, 2006, shareholders of KCS approved the company's merger with Petrohawk, the defendant, effective April 20, 2006. Doc. No. 37-1, pp. 57–66. Petrohawk was the surviving entity. On

---

[1] On November 10, 2015, the defendant filed a notice indicating that the period from 1992-2006 was no longer so agreed. The Court notes this going forward, but that dispute does not alter the analysis on these cross-motions.

October 1, 2006, Petrohawk sold its right and duty to operate and fifty percent (50%) working interest in the Well to Saga Petroleum, LLC ("Saga"). Doc. No. 37-1, pp. 67–69. On February 17, 2011, Saga mailed a letter to Farleigh requesting documentation of his interest in the Well, stating that, "Saga . . . became an operator of this well and [needs Farleigh's] help to determin[e] [Farleigh's] working interest in [the Well]. There is some money in suspense. . . ." Doc. No. 37-1, p. 70. Farleigh replied on February 22, 2011, attaching documents verifying ownership. Doc. No. 39-5, p. 2. Tom Swanson, Exploration Manager for Farleigh, stated that the February 17, 2011, letter, "caused Plaintiffs to investigate whether the well was, in fact shut in as they had previously believed." Doc No. 37-2, pp. 2–3.

The plaintiffs investigated the situation, discovering that the Well had produced gas from 1992 to 2006. A summary of the Well's production during that period of time indicated that 89,165 MCF had been produced.[2] Doc. No. 37-1, p. 45. Annual production averaged about 5944 MCF during the fifteen year period. The Well averaged annual production of 32,022 MCF from 1983 to 1991. Doc. No. 37-1, pp. 46–49.

On May 14, 2014, the plaintiffs filed the *Complaint*, claiming that they never received accountings nor royalties in violation of the Wyoming Royalties Payment Act ("WRPA")—Wyoming Statute §§ 30-5-301 through 30-5-305.[3] Plaintiffs have moved for partial summary judgment, seeking judgment as a matter of law on liability under the WRPA, which would leave damages, interest, and attorneys' fees for trial. Petrohawk has moved for summary judgment, seeking judgment as a matter of law for four reasons: (1) the action is barred by the statute of limitations; (2) the WRPA cannot be used as a private cause of action; (3) plaintiffs have not

---

[2] 1 MCF equals 1,000 cubic feet of natural gas.
[3] The plaintiffs filed the *Complaint* in the Fifth Judicial District Court of the State of Wyoming. Petrohawk removed the case to this Court on July 3, 2014. The Court entered its *Order on Removal* on July 15, 2014.

3

demonstrated a dispute of material fact as to damages; and (4) the action is barred by the doctrine of laches.

## STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is genuine if a reasonable juror could resolve the disputed fact in favor of either side. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is material if under the substantive law it is essential to the proper disposition of the claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn" in the non-movant's favor. *Anderson*, 477 U.S. at 255.

The party moving for summary judgment has the burden of establishing the nonexistence of a genuine dispute of material fact. *Lynch v. Barrett*, 703 F.3d 1153, 1158 (10th Cir. 2013). The moving party can satisfy this burden by either (1) offering affirmative evidence that negates an essential element of the nonmoving party's claim, or (2) demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *See* Fed. R. Civ. P. 56(c)(1)(A)–(B).

Once the moving party satisfies this initial burden, the nonmoving party must support its contention that a genuine dispute of material fact exists either by (1) citing to particular materials in the record, or (2) showing that the materials cited by the moving party do not establish the absence of a genuine dispute. *See id.* The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive a summary judgment motion, the

nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Further, when opposing summary judgment, the nonmoving party cannot rest on allegations or denials in the pleadings but must set forth specific facts showing that there is a genuine dispute of material fact for trial. *See Travis v. Park City Mun. Corp.*, 565 F.3d 1252, 1258 (10th Cir. 2009).

When considering a motion for summary judgment, the court's role is not to weigh the evidence and decide the truth of the matter, but rather to determine whether a genuine dispute of material fact exists for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact-finder, not the court. *Id.* at 255.

## DISCUSSION

*Construing the plaintiffs' Complaint.*

Before addressing each side's motion, the Court notes that the two-page *Complaint* lacks clarity and must be interpreted before further analysis. Paragraphs 5 and 6 explain the two causes of action present in this case.

> 5. KCS Energy Inc. owned and produced [the Well] between 1992 and 2006 without ever accounting for the production to Plaintiffs or paying Plaintiffs their proportionate shares in violation of Wyo. Stat. §§30-5-301, et seq.
>
> 6. Defendant Petrohawk assumed the obligations of KCS Energy, Inc. when it acquired the corporation; KCS Energy, Inc. and then sold [the Well] to Saga Petroleum in 2006 without ever paying Plaintiffs the sum due them for the production from said well during the period 1992–2006.

Doc. No. 2, p.1. The above allegations discuss the statutory violation, which implicitly includes a legal entitlement to royalties. *See* WYO. STAT. ANN. § 30-5-301 (2015) (requiring legal entitlement to royalties). The plaintiffs' potential legal entitlement comes from the Joint

Operating Agreement. Doc. No. 39-7. The Court is convinced that two causes of action are pled in the *Complaint*: breach of contract and violation of the WRPA.[4]

### I. Petrohawk is entitled to partial summary judgment on the plaintiffs' claim for relief under Wyoming Statute §§ 30-5-305(b) and 30-5-303(c). Petrohawk is not entitled to summary judgment on the plaintiffs' other causes of action.

#### a. Petrohawk did not have a duty to report to the plaintiffs under Wyoming Statute §§ 30-5-305(b) and 30-5-303(c), because the statute only imposes a penalty for insufficient reporting "whenever payment is made."

In the *Complaint*, the plaintiffs allege violation of the WRPA, which includes Wyoming Statute §§ 30-5-305(b) and 30-5-303(c). Wyoming Statute § 30-5-305(b) states that "*[w]henever payment is made* for oil and gas production to an interest owner, all of the following information shall be included and labeled on the check stub or on an attachment to the form of payment . . . ." WYO. STAT. ANN. § 30-5-305(b) (2015) (emphasis added); *see also Morris v. CMS Oil and Gas Co.*, 2010 WY 37, ¶ 32, 227 P.3d 325, 334 ("Section 30-5-305(b) requires reporting on a regular monthly basis once payment commences."). If Wyoming Statute § 30-5-305(b) is violated, the violator is liable under Wyoming Statute § 30-5-303(c) to the owner of the royalty for one hundred dollars ($100) per month until the complete reporting is provided. *Id.* § 30-5-303(c). The plaintiffs provided evidence indicating that Petrohawk has never paid royalties to the plaintiffs. Doc. No. 37-1, p. 3; Doc. No. 37-2, p. 2. A prerequisite to application of this provision

---

[4] Petrohawk is not prejudiced by this construction of the *Complaint*, because Petrohawk anticipated litigating the terms of the Joint Operating Agreement, as shown by its arguments on these motions. *See* Doc No. 39, p. 9; Doc. No. 43 p. 10; Doc. No. 44, p. 8. The evidence in the record indicates that the Joint Operating Agreement is at the center of this dispute. Even though the Court prefers a more extensive and elaborate complaint than provided by the plaintiffs, the interests of fairness and justice require the Court to construe the *Complaint* in this fashion.

is payment for production. *Id.* § 30-5-305(b). Therefore, Petrohawk is entitled to summary judgment on the statutory penalty for insufficient reporting.

### b. The plaintiffs meet the statute of limitations as to their cause of action for breach of contract and violation of the WRPA.

Petrohawk argues that the plaintiffs did not meet the one-year statute of limitations that applies to penalty or forfeiture statutes. WYO. STAT. ANN. § 1-3-105(a)(v)(D) (2015); *Cabot Oil & Gas Corp. v. Followill*, 2004 WY 80, ¶ 14, 93 P.3d 238, 243 (Wyo. 2004). Petrohawk contends that the entire WRPA is a penalty. Petrohawk asserts that the entire case should be dismissed because the *Complaint* was filed outside one year of the plaintiffs' discovery of this cause of action. The plaintiffs contend that an eight-year statute of limitations applies because the statute—as a whole—is not a penalty or forfeiture statute. *See* WYO. STAT. ANN. § 1-3-105(a)(ii)(B); *see also Town of Moorcroft, Wyo. v. Enron Oil & Trading Transp. Co.*, 986 F.2d 1429, 1993 WL 34700, p. 1–2 (10th Cir. 1993) (unpublished decision) (interpreting the WRPA as a compensatory remedy with an eight-year statute of limitation under § 1-3-105 (a)(ii)(B)). First, the Court will assess when the statutes of limitations started to run; then, the Court will address which statute of limitations applies to each cause of action.

*Discovery of the cause of action.*

In Wyoming, statutes of limitations are triggered when the plaintiff knew or had reason to know of the existence of a cause of action. *Cabot Oil & Gas Corp.*, 93 P.3d at 243. On February 17, 2011, Saga mailed the letter to Farleigh that gave Farleigh notice of production from the Well. Doc. No. 37-1, p. 70. Farleigh replied via letter on February 22, 2011. Doc. No. 39-5, p. 2. Tom Swanson, Exploration Manager for Farleigh, stated that the February 17, 2011 letter "caused Plaintiffs to investigate whether the well was, in fact shut in as they had previously

believed." Doc No. 37-2, pp. 2–3. Eli Bebout, an owner of Nucor, stated that "[t]his was the first time that Nucor had reason to believe that the well was in production . . . ." Doc. No. 37-1, p. 4. On February 17, 2011, each statute of limitations commenced. May 14, 2014 is when the plaintiffs filed the *Complaint*, less than three years and three months after February 17, 2011.

*Statute of limitations for breach of contract.*

The statute of limitations for breach of written contract is ten years. WYO. STAT. ANN. § 1-3-105(a)(i). The written contract is the Joint Operating Agreement. Doc. No. 39-7. The plaintiffs filed the *Complaint* within the statute of limitations for their breach of contract cause of action. Next, the Court will analyze which statute of limitations applies to the WRPA.

*Statute of limitations for statutory violations.*

Petrohawk argues that the entire WRPA is a penalty for statute of limitations purposes. The plaintiffs argue that the entire statute is compensatory for statute of limitations purposes, except the reporting penalty. The Wyoming Supreme Court has not directly addressed which statute of limitations applies to the WRPA, except as to the reporting penalty. *Cabot Oil & Gas Corp.*, 93 P.3d at 243. The Court must decide whether only the penalty statute of limitations applies to the WRPA or whether the portion of the WRPA not dealing with reporting penalties is compensatory for statute of limitations purposes.

The Wyoming Supreme Court has not directly addressed this issue, so this Court—sitting in diversity—must make an *Erie*-guess as to how the Wyoming Supreme Court would rule. *Pehle v. Farm Bureau Life Ins. Co., Inc.*, 397 F.3d 897, 901–02 (10th Cir. 2005). The Court will attempt to predict state law, not create or modify it. *Id.* The Court may consider any resource available including decisions of courts in Wyoming and other states. *Cornhusker Cas. Co. v. Skaj*, 786 F.3d 842, 852 (10th Cir. 2015). The Court may look to dicta in the opinions of the

8

Wyoming Supreme Court. *See Valley Forge Ins. Co. v. Health Care Management Partners*, Ltd., 616 F.3d 1086, 1093 (10th Cir. 2010) (stating that courts sitting in diversity can look to dicta as being instructive). This Court will not trouble our sister state court every time an arguably unsettled question of state law appears. *Cornhusker Cas. Co.*, 786 F.3d at 852 citing *Pino v. U.S.*, 507 F.3d 1233, 1236 (10th Cir. 2007). When this Court sees a "reasonably clear and principled course" it will seek to follow it on its own. *Id.*

On one hand, the WRPA has been construed most often as remedial in nature. *See Ultra Resources, Inc. v. Hartman*, 2010 WY 36, ¶ 70, 226 P.3d 889, 916 (Wyo. 2010) ("The WRPA is intended to 'stop oil [and gas] producers from retaining other people's money for their own use' . . . As such the WRPA is intended to be remedial and is liberally construed."); *Ferguson v. Coronado Oil Co.*, 884 P.2d 971, 979 (Wyo. 1994) ("The [WRPA] is to be liberally construed to effectuate its remedial purpose."). Remedial means "intended to correct, remove, or lessen a wrong, fault or defect"; not to punish or penalize. Bryan A. Garner, BLACK'S LAW DICTIONARY (10th ed. 2014). The statute appears to be predominately compensatory. This is not the first time a court in this district has recognized such. *See Wold v. Hunt Oil Co.*, 52 F.Supp.2d 1330, 1335–36 (D. Wyo. 1999) ("The [WRPA] was designed to protect royalty owners . . . .").

On the other hand, the reporting portion of the statute is a penalty for purposes of the statute of limitations. *Cabot Oil & Gas Corp.*, 93 P.3d at 243. And the eighteen percent interest portion of the WRPA has been discussed generally as a penalty. *Cities Serv. Oil and Gas Corp. v Wyo.*, 838 P.2d 146, 155 (Wyo. 1992); *Moncrief v. Harvey*, 816 P.2d 97, 105 (Wyo. 1991).

The most instructive case is *Cabot*. In *Cabot*, the parties did not dispute which statute of limitations applied. *Cabot Oil & Gas Corp.*, 93 P.3d at 242–43. Cabot, the party responsible for paying the royalties, argued that the royalty owners did not meet the one-year or eight-year

statute of limitations. *Id.* The royalty owners contended that the one-year statute of limitations applied, but the time did not start to run until an accurate report of production was submitted. *Id.* The court agreed with the royalty owners, but in doing so stated, "[t]he one-year statute of limitations related to the penalty for failure to properly report under the [WRPA] begins to run if, and when, the producer issues a proper report." *Id.* at 243. The federal court certifying the question and the parties put the discovery rule in front of the Wyoming Supreme Court; not which statute of limitations applied. *Id.* Thus, the discussion of which statute of limitations applied is persuasive dicta.

The *Cabot* Court categorized a portion of the WRPA as a penalty without categorizing the remaining portion of the statute. *Id.* Using deductive reasoning, this suggests the remaining portion of the statute is not controlled by the one-year statute of limitations for penalties. However, the *Cabot* Court may have been appropriately sidestepping that issue. Categorizing a portion of the statute under the one-year statute of limitations and not the remainder is indicative of how the Wyoming Supreme Court would decide this issue, but not dispositive on its own.

Next, the Court examines the law on statutes of limitations in Wyoming. Statutes of limitations should be liberally construed, but courts may not extend them under a liberal construction to claims that are not clearly barred. *Cathcart v. Meyer*, 2004 WY 49, ¶ 30, 88 P.3d 1050, 1063 (Wyo. 2004) citing *Gustafson v. Bridger Coal Co.*, 834 F.Supp 352, 357 (D. Wyo. 1993); *John Meier & Son, Inc. v. Horse Creek Conservation Dist. Of Goshen County*, 603 P.2d 1283, 1287 (Wyo. 1979); 51 Am.Jur.2d *Limitation of Actions* § 54 (2000). When there is doubt as to which statute of limitations should apply, courts prefer applying the provision allowing the longer statute of limitations. *Gustafson*, 834 F.Supp. at 357 citing *Metzger v. Kalke*, 709 P.2d 414, 416–17 (Wyo. 1985). "Statutes prescribing a relatively short period for suit are usually

construed narrowly to give the holder of a cause of action a fair opportunity to present his claim." *Metzger*, 709 P.2d at 417. Given these overarching legal guidelines, the Court finds the eight-year statute of limitations applies to the WRPA, except for the reporting penalty provision.

In doing so, the Court recognizes that the Wyoming Supreme Court has called the eighteen percent interest in Wyoming Statute § 30-5-303(a) a penalty multiple times. *See Cities Serv. Oil and Gas Corp.*, 838 P.2d at 155; *Moncrief*, 816 P.2d at 105; *see also Independent Producers Marketing Corp. v. Cobb*, 721 P.2d 1106, 1107 (Wyo. 1986). However, the Wyoming Supreme Court was never attempting to discern which statute of limitations applied to that portion of the statute. It only stated a general recognition that the interest is a disincentive to holders of the oil and gas royalties of another. The interest is directly tied to the compensation awarded in the same subsection of the statute. WYO. STAT. ANN. § 30-5-303(a). This Court sees no reason to apply a markedly shorter and separate statute of limitations to the interest portion of the WRPA, especially considering the preference of applying the longer statute of limitations in situations of doubt.

The plaintiffs filed this lawsuit less than three years and three months after discovery of the cause of action for compensation under the WRPA.[5] Applying the eight-year statute of limitations under Wyoming Statute § 1-3-105(a)(2)(B), the plaintiffs are within the statute of limitations as to their claim under the WRPA.

### c. The facts and circumstances do not warrant the application of the doctrine of laches.

Petrohawk argues that the doctrine of laches bars the plaintiffs' lawsuit because the plaintiffs delayed enforcing their rights to the disadvantage of Petrohawk. The plaintiffs contend

---

[5] The plaintiffs discovered their causes of action on February 17, 2011. On May 14, 2014, the plaintiffs filed their *Complaint*.

that any delay is Petrohawk's fault because they did not pay or report any of the royalties due to the plaintiffs. The doctrine of laches is a defense in equity, dependent on the specific circumstances of the case. *Windsor Energy Group, LLC v. Noble Energy, Inc.*, 2014 WY 96, ¶ 12, 330 P.3d 285, 288–89 (Wyo. 2014). Petrohawk must prove two elements for the doctrine of laches to apply: (1) inexcusable delay; and (2) injury, prejudice, or disadvantage to the defendants or others. *Id.*

No specific length of delay is inexcusable, and the circumstances of each case must be considered. *Id.* at 292–93. In *Windsor*, the plaintiff sued the defendant to collect payment that was never received from a third party. *Id.* The plaintiff delayed five years in notifying the defendant of the non-payment of a third party, when the plaintiff was in position better monitor the third party. *Id.* at 294. The plaintiff also delayed seven years in providing specific documentation to the defendant about the third party's payment or lack thereof. *Id.* The plaintiff had also continually refused to produce underlying documents. *Id. Windsor*'s facts are not analogous to this case. Here, the plaintiffs have delayed nearly three years and three months. Petrohawk has not produced any evidence showing that the plaintiffs withheld documentation. The plaintiffs remained under the assumption that whoever operated the well would request a title opinion and attempt to pay the rightful owners the royalties owed under the operating agreement and the WRPA. The plaintiffs' delay in bringing this case is excusable.

Next, the Court will address the second element of laches. Petrohawk argues that it was prejudiced because it could have attempted to resolve this issue earlier. Given the Court's ruling on the reporting penalty, there can be minimal harm to Petrohawk by this delay. In addition, Petrohawk had an obligation to determine who owned the mineral royalties when it operated the Well. *See* WYO. STAT. ANN. § 30-5-301. Petrohawk cannot place the burden on the plaintiffs

when the WRPA places an obligation on Petrohawk to pay royalties to whom they are owed. Petrohawk does not show any injury like the defendant in *Windsor*—missing underlying documentation that the court discussed as a potential spoliation of evidence. *Winsdor Energy Group LLC*, 330 P.3d at 293–95. Petrohawk was not injured, prejudiced, or disadvantaged. The doctrine of laches does not apply under these facts and circumstances.

### d. A dispute of material fact exists as to damages.

Petrohawk contends that the plaintiffs are only entitled to their share of income minus applicable expenses pursuant to the Joint Operating Agreement. *See* Doc. No. 39-7. Petrohawk produced documentation indicating that a low amount of profit was made from 1992 until 2006; an amount the defendant calls *de minimus*. Doc. No. 43-3, pp. 2–3. Petrohawk also argues that under the WRPA the plaintiffs are only entitled to proceeds derived from the sale of production. *See* WYO. STAT. ANN. § 30-5-301(a). Petrohawk asserts that the plaintiffs cannot prove that proceeds were derived from the well during that period of time, given its documentary submission. Doc No. 43-3. The plaintiffs argue that the parties agree as to the amount of gas produced. The plaintiffs contend that the gas prices from 1992 until 2006 can be established at trial. The plaintiffs assert that summary judgment is not proper, because there is a genuine issue of material fact as to the amount of damages they are due.

Petrohawk has produced evidence showing the plaintiffs may be entitled to minimal damages. Doc. No. 43-3, pp. 2–3 (demonstrating lack of profit from 1992–2006 in Laurie O'Block's affidavit). Petrohawk admits the plaintiffs may be entitled to *de minimus* damages of a share of $2984 in revenue. Doc. No. 39, pp. 9–10; *see* Doc. No. 43-3. The plaintiffs have produced evidence showing they may be entitled to an amount of damages, disputing the affidavit of Laurie O'Block. *See* Doc. No. 37-1, pp. 45–56 (production report showing the Well's

gas production from 1992 until 2006); *see also* Doc No. 40-1 (Mr. Swanson explaining that the affidavit of O'Block mischaracterizes the actual profit of the well and the various ways that oil and gas fields sell production to maintain the wellsite via affidavit). Given the conflicting factual evidence as to damages, the Court denies summary judgment to Petrohawk on this issue.

## II. The plaintiffs are not entitled to partial summary judgment, because disputed issues of material fact exist as to their claim for breach of contract and violation of the WRPA.

The plaintiffs assert there is no dispute of material fact exists as to Petrohawk's liability under the WRPA and as to breach of contract. Petrohawk contends that there are disputed issues of material fact precluding summary judgment in favor of the plaintiffs. Under the WRPA, the plaintiffs must be "legally entitled" to royalties. WYO. STAT. ANN. § 30-5-301(a). The Joint Operating Agreement controls whether the plaintiffs were legally entitled to royalties. *See* Doc. No. 39-7.

The parties agree that each plaintiff held a twenty-five (25%) working interest in the Well from 1992 until 2006. The parties do not agree as to whether the plaintiffs are entitled to any payment of royalties under the WRPA and the Joint Operating Agreement. Plaintiffs put forward affidavits from Swanson and Bebout with exhibits that indicate the plaintiff may be entitled to royalties. Doc No. 36-1; Doc. No. 36-2. These affidavits and exhibits include a description of the pertinent events from 1982 to present, a copy of the Joint Operating Agreement, and a record of the Well's gas production. *Id.* The Joint Operating Agreement appears to allow for payment of royalties after costs and liabilities have been paid. Doc. No. 39-7, p. 5. Under the WRPA, the drilling operation must create "proceeds derived from the sale of production" before the royalty owner is entitled to such. WYO. STAT. ANN. § 30-5-301(a). Both theories appear to require proof

gas production from 1992 until 2006); *see also* Doc No. 40-1 (Mr. Swanson explaining that the affidavit of O'Block mischaracterizes the actual profit of the well and the various ways that oil and gas fields sell production to maintain the wellsite via affidavit). Given the conflicting factual evidence as to damages, the Court denies summary judgment to Petrohawk on this issue.

## II. The plaintiffs are not entitled to partial summary judgment, because disputed issues of material fact exist as to their claim for breach of contract and violation of the WRPA.

The plaintiffs assert there is no dispute of material fact exists as to Petrohawk's liability under the WRPA and as to breach of contract. Petrohawk contends that there are disputed issues of material fact precluding summary judgment in favor of the plaintiffs. Under the WRPA, the plaintiffs must be "legally entitled" to royalties. WYO. STAT. ANN. § 30-5-301(a). The Joint Operating Agreement controls whether the plaintiffs were legally entitled to royalties. *See* Doc. No. 39-7.

The parties agree that each plaintiff held a twenty-five (25%) working interest in the Well from 1992 until 2006. The parties do not agree as to whether the plaintiffs are entitled to any payment of royalties under the WRPA and the Joint Operating Agreement. Plaintiffs put forward affidavits from Swanson and Bebout with exhibits that indicate the plaintiff may be entitled to royalties. Doc No. 36-1; Doc. No. 36-2. These affidavits and exhibits include a description of the pertinent events from 1982 to present, a copy of the Joint Operating Agreement, and a record of the Well's gas production. *Id.* The Joint Operating Agreement appears to allow for payment of royalties after costs and liabilities have been paid. Doc. No. 39-7, p. 5. Under the WRPA, the drilling operation must create "proceeds derived from the sale of production" before the royalty owner is entitled to such. WYO. STAT. ANN. § 30-5-301(a). Both theories appear to require proof

gas production from 1992 until 2006); *see also* Doc No. 40-1 (Mr. Swanson explaining that the affidavit of O'Block mischaracterizes the actual profit of the well and the various ways that oil and gas fields sell production to maintain the wellsite via affidavit). Given the conflicting factual evidence as to damages, the Court denies summary judgment to Petrohawk on this issue.

## II. The plaintiffs are not entitled to partial summary judgment, because disputed issues of material fact exist as to their claim for breach of contract and violation of the WRPA.

The plaintiffs assert there is no dispute of material fact exists as to Petrohawk's liability under the WRPA and as to breach of contract. Petrohawk contends that there are disputed issues of material fact precluding summary judgment in favor of the plaintiffs. Under the WRPA, the plaintiffs must be "legally entitled" to royalties. WYO. STAT. ANN. § 30-5-301(a). The Joint Operating Agreement controls whether the plaintiffs were legally entitled to royalties. *See* Doc. No. 39-7.

The parties agree that each plaintiff held a twenty-five (25%) working interest in the Well from 1992 until 2006. The parties do not agree as to whether the plaintiffs are entitled to any payment of royalties under the WRPA and the Joint Operating Agreement. Plaintiffs put forward affidavits from Swanson and Bebout with exhibits that indicate the plaintiff may be entitled to royalties. Doc No. 36-1; Doc. No. 36-2. These affidavits and exhibits include a description of the pertinent events from 1982 to present, a copy of the Joint Operating Agreement, and a record of the Well's gas production. *Id.* The Joint Operating Agreement appears to allow for payment of royalties after costs and liabilities have been paid. Doc. No. 39-7, p. 5. Under the WRPA, the drilling operation must create "proceeds derived from the sale of production" before the royalty owner is entitled to such. WYO. STAT. ANN. § 30-5-301(a). Both theories appear to require proof

of profit by the plaintiffs. Because the plaintiffs did not produce any evidence regarding actual profit, they fail to establish that no dispute of material fact exists as to either the contractual or statutory liability claim. In addition, Petrohawk produced evidence showing a dispute of material fact on the issue of profit. Doc. No. 43-1. The Court cannot rule on liability under the WRPA or the contract until facts are presented at trial.

## CONCLUSION

The Court finds (1) the plaintiffs' claim for relief under Wyo. Stat. Ann. §§ 30-5-303(c) and 30-5-305(b) shall be dismissed; (2) the plaintiffs met the statutes of limitations as to both breach of contract and the alleged violation of the WRPA; (3) the facts and circumstances do not justify application of the doctrine of laches; and (4) a dispute of material fact exists as to both of the plaintiffs' causes of action.

The issues remaining for trial are: (i) the plaintiffs' cause of action for breach of contract; and (ii) the plaintiffs' cause of action for violation of the WRPA. For the foregoing reasons, it is hereby

**ORDERED** that the defendant's *Motion for Summary Judgment* (Doc. No. 38) shall be, and is, **GRANTED IN PART, DENIED IN PART**. It is further

**ORDERED** that the plaintiffs' *Motion for Partial Summary Judgment* (Doc. No. 36) shall be, and is, **DENIED**. It is further

**ORDERED** that the parties shall be prepared to proceed to trial as presently scheduled on December 14, 2015.

Dated this 12th day of November, 2015.

*/s/ Alan B. Johnson*
Alan B. Johnson
United States District Judge